UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:06CR-24-R

UNITED STATES OF AMERICA                                                           PLAINTIFF

v.

COREY FERGUSON                                                                     DEFENDANT

**MEMORANDUM OPINION**

This matter is before the Court on Defendant Corey Ferguson's Motion to Suppress Evidence (Docket #209). Plaintiff has filed a response (Docket #219), to which Ferguson has replied (Docket #222). Ferguson has also filed a Supplemental Motion to Suppress Evidence (Docket #233). This matter is now ripe for adjudication. For the reasons that follow, Ferguson's Motion to Suppress is DENIED IN PART AND GRANTED IN PART.

**BACKGROUND**

The Bowling Green/Warren County Drug Task Force and the Bureau of Alcohol, Tobacco, Firearms, and Explosives initiated an investigation into drug trafficking activity centered around the Fadz 4 Dayz Barber Shop in Bowling Green Kentucky. Richard Cox and Jerome Shanklin worked as barbers at Fadz 4 Dayz. Law enforcement learned that Cox and Shanklin were selling cocaine, crack cocaine, and marijuana from Fadz 4 Days. Law enforcement also learned that Ferguson was a major drug supplier in the Bowling Green area and was serving as Cox's source of supply.

On January 26, 2006, law enforcement began Title III interceptions from video cameras placed inside Fadz 4 Dayz pursuant to a Court Order. The Title III interceptions continued until February 17, 2006. On February 1, 2006, the Title III interception captured Shanklin selling

approximately a 1/2 kilogram of cocaine to Derrick Lander. Lander paid Shanklin with a large wad of money that he placed in a Nike shoe box. Approximately thirty minutes later, Ferguson arrived at Fadz 4 Dayz driving a black sport utility vehicle (SUV). Shanklin placed the Nike shoe box in Ferguson's SUV.

On February 8, 2006, the Title III interception captured a conversation between Cox and Shanklin. Cox stated that he had been receiving "work," a slang term for cocaine, from Ferguson and that he had been cooking it into crack cocaine, obtaining approximately ninety-five grams of crack cocaine.

On May 3, 2006, a Federal Grand Jury indicted Ferguson and other co-defendants on various narcotics related charges. Specifically, Ferguson was charged with conspiring to manufacture fifty grams or more of crack cocaine, conspiring to distribute fifty grams or more of crack cocaine, conspiring to distribute cocaine, conspiring to distribute marijuana, manufacturing fifty grams or more of crack cocaine, and distributing 500 grams or more of cocaine. A federal arrest warrant issued for Ferguson following his indictment on these charges.

On May 15, 2006, law enforcement officials attempted to arrest Ferguson pursuant to the federal arrest warrant at 2946 Mt. Lebanon Church Road. Law enforcement officials observed a vehicle associated with Ferguson in the driveway of the residence. Police saw pieces of mail bearing Ferguson's name in plain view in this vehicle. Police knocked on the residence door and announced their presence. They observed an individual peek through the blinds at the residence and heard music coming from inside the house but no one came to the door. Police maintained surveillance on the residence for approximately forty minutes but then left in order to execute another arrest warrant.

Shortly thereafter, the Kentucky State Police received a call from a neighbor stating that Ferguson had just left the residence and entered a red Dodge pickup truck towing a trailer. Trooper Terry Alexander stopped the red pickup in which Ferguson was a passenger. Trooper Alexander arrested Ferguson on the outstanding federal arrest warrant.

Trooper Alexander searched Ferguson incident to his arrest. The officer found a live 12-gauge shotgun shell in Ferguson's front pants pocket. A review of Ferguson's criminal history revealed that he had two prior felony convictions in Warren Circuit Court for Trafficking in a Controlled Substance.

Later that same day, law enforcement requested a search warrant for Ferguson's residence. A Warren Circuit Court Judge issued a search warrant for Ferguson's residence on 2946 Mt. Lebanon Church Road in Bowling Green, Kentucky.[1] The search warrant permitted the officers to seize 12-gauge shotgun shells, a 12-gauge shotgun, and documentation regarding the purchase of a 12-gauge shotgun. Law enforcement officers searched Ferguson's residence that same day pursuant to the Warren Circuit Court Search Warrant. They seized $5011 in United States currency, five shotgun shells, a baggie containing marijuana, a safe deposit key, various documents, four rifle rounds of ammunition, four surveillance cameras, and one JVC television. Additionally, the officers observed personal items which included, but are not limited to, clothing, sports memorabilia, and jewelry.

On November 21, 2006, Ferguson filed a motion to suppress the search of his residence. A hearing on this motion was held on January 3, 2007.

## DISCUSSION

---

[1] Ferguson's residence at 2946 Mt. Lebanon Road was actually in Alvaton, Kentucky.

**I.      PROBABLE CAUSE NEXUS**

Ferguson claims that the affidavit in support of the application for the search warrant failed to establish probable cause for issuance of the search warrant. Specifically, Ferguson asserts that Detective Craig Sutter, the affiant-officer, made material misrepresentations and omissions in his affidavit which caused the Magistrate to issue the warrant.

The Fourth Amendment to the United States Constitution specifically requires that, 'no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. The law does not require that every conceivable explanation other than a suspect's illegal conduct be ruled out in order to find probable cause, "[i]nstead, we need only consider whether there are facts that, given the factual and practical considerations of everyday life, could lead a reasonable person to believe that an illegal act has occurred or is about to occur." *United States v. Strickland*, 144 F.3d 412, 416 (6th Cir. 1998) (citations omitted). "To demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006) (quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)), *cert. denied*, 127 S. Ct. 446 (2006). The issuing judge's findings of probable cause should not be set aside unless arbitrarily made. *United States v. Brown*, 147 F.3d 477, 484 (6th Cir. 1998).

In reaching a probable cause determination, the Court is generally limited to looking only within the four corners of the affidavit. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). However, where the defendant makes a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause," the court

4

must conduct a hearing on the issue upon the defendant's request. *Id.* at 155-56. Ferguson claimed that he was entitled to such a hearing based on his challenge to the veracity of Detective Sutter's summary of the report by the neighbor; his dispute of Detective Sutter's allegation that Trooper Alexander seized a 12-gauge shotgun shell from Ferguson's pants pocket; and his argument that Detective Sutter lacked knowledge that Ferguson was engaged in drug trafficking and that he had the experience or training to know that drug traffickers are often armed and maintain firearms at their residence. A hearing on this issue was held on January 3, 2007.

At the hearing, Mike Ober, a private investigator retained by Ferguson, testified that the neighbor who called the police stating that Ferguson had left the residence and entered a red Dodge pickup truck towing a trailer did so around 10:00 a.m. This supports the veracity of Detective Sutter's summary of the neighbor's report, which Ferguson claims leads a reasonable person to believe that the neighbor observed Ferguson leaving the residence sometime around 10:10 a.m.

At the hearing, Trooper Alexander testified that he found a 12-gauge shotgun shell in Ferguson's right front pants pocket. No contradictory evidence was provided. Hence, the evidence supports Detective Sutter's allegation in the affidavit that Trooper Alexander seized a 12-gauge shotgun shell from Ferguson.

Detective Sutter testified at the hearing that he had a year and four months of narcotics experience at the time he wrote the affidavit. He stated that he believed that there would be a shotgun or other firearm in Ferguson's residence based on the common knowledge that firearms are generally associate with drug trafficking. He stated that this knowledge came from his training and also from talking to other police officers. Detective Sutter had been involved in a year-long investigation of Ferguson for drug trafficking and was also aware of Ferguson's two prior drug

5

trafficking convictions.

Based on the evidence presented at the hearing, the Court finds that the discovery of Ferguson's illegal possession of ammunition minutes after leaving the residence at 2946 Mt. Lebanon Church Road established probable cause to believe additional evidence of his possession of firearms or ammunition would be found in that residence. Thus, the search warrant was valid.

## II.     SEIZURE OF ITEMS OUTSIDE SCOPE OF WARRANT

Ferguson claims that the seizure of the $5011 in United States currency, the safe deposit key, documents in his name but unrelated to the purchase of a shotgun shell, the JVC television, and the four surveillance cameras was outside the scope of the search warrant and therefore unconstitutional.[2] Ferguson seeks to suppress these items from being introduced into evidence in any trial of this matter.

"Seizing items beyond the scope of a warrant's authorization violates the Fourth Amendment rights of the subject of a search." *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 554 (6th Cir. 2003). "However, where a warrant justifies an officer's initial intrusion and the officer 'in the course of the search comes across some other article of incriminating character,' the plain view doctrine may supplement the prior justification and permit the warrantless seizure." *Id.* (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971)). Under the plain view doctrine, an officer may seize items not within the scope of the warrant if the evidence is "(1) in plain view; (2) of a character that is immediately incriminating; (3) viewed by an officer lawfully located in a place from where the object can be seen; and (4) seized by an officer who has a lawful right of access to the object itself."

---

[2] Ferguson acknowledges that the bag of marijuana constitutes contraband and may be lawfully seized.

*Id.* (quoting *United States v. Roark*, 36 F.3d 14, 18 (6th Cir. 1994)).  As the officers were executing a valid warrant and thus were legally in a place where they saw the subject items in plain view, the question this Court must resolve is whether the incriminating character of the subject items was immediately apparent.  *See id.*

The Court considers three factors in determining whether probable cause is immediately apparent upon viewing an object:

> (1) the nexus between the seized object and the items particularized in the warrant; (2) whether the intrinsic nature or appearance of the seized object gives probable cause to associate it with criminal activity; and (3) whether probable cause is the direct result of the executing officer's instantaneous sensory perceptions.

*Id.* (quoting *United States v. Calloway*, 116 F.3d 1129, 1133 (6th Cir. 1997)).  If there is probable cause to associate the property with criminal activity, a plain view seizure is "presumptively reasonable and does not require an unduly high degree of certainty."  *Id.* (citing *Texas v. Brown*, 460 U.S. 730, 741-42 (1983)).

The searching officials knew of the federal arrest warrant stemming from Ferguson's indictment on drug trafficking charges and also knew of his two prior felony convictions for drug trafficking.  Detective Sutter testified that it is common knowledge within law enforcement that firearms generally are associated with drug trafficking.  Special Agent David Hayes testified that the cameras that were hooked up to the JVC television constituted a security system that police officers most typically see associated with drug traffickers.  Thus, the police had probable cause to associate the cameras and the JVC television with criminal activity, namely drug trafficking.  Large quantities of cash are often associated with drug trafficking.  *See United States v. Thomas*, No. 88-6341, 1989 WL 72926 at *1 (6th Cir. July 5, 1989).  Similarly, individuals involved in drug trafficking often use safe deposit boxes to store currency, controlled substances, and other materials

related to their illegal activity. *See, e.g.*, *United States v. 174,206.00 in United States Currency*, 320 F.3d 658, 659 (6th Cir. 2003); *Thomas*, 1989 WL 72926 at *1. Therefore, the officers had probable cause to associate the $5011 in United States currency and the safe deposit key with criminal drug trafficking activity. However, the Court finds that the police did not have probable cause to associate the documents unrelated to firearms with criminal activity.

Therefore, this Court finds that the documents seized unrelated to firearms should be suppressed.

### III.    FAILURE TO IDENTIFY WITH PARTICULARITY

The search warrant and accompanying affidavit presented to the Warren County Circuit Court Judge for review contained an address of 2946 Mount Lebanon Church Road, Bowling Green, Kentucky. The submitted search warrant and affidavit did not include a zip code for the address. On May 15, 2006, the affidavit was reviewed and signed by a Circuit Court Judge. Law enforcement executed the search warrant at 2946 Mount Lebanon Road, Alvaton, Kentucky.[3] The residence at 2946 Mount Lebanon Road was outside of the Bowling Green city limits. Ferguson contends that the inclusion of the incorrect address on the search warrant violates the Fourth Amendment and, therefore, the evidence seized pursuant to this invalid search warrant should be suppressed as fruit of the poisonous tree.

The Fourth Amendment requires search warrants to particularly describe the place to be search. *United States v. King*, 227 F.3d 732, 750 (6th Cir. 2000). There is a two part test for determining whether the description in a warrant is sufficient to satisfy the particularity requirement: "(1) whether the place to be searched is described with sufficient particularity as to enable the

---

[3] Alvaton is a town in the southern part of Warren County.

8

executing officers to locate and identify the premises with reasonable effort; and (2) whether there is reasonable probability that some other premises may be mistakenly searched." *Id.*

Here Ferguson does not dispute that the warrant adequately described the residence, its location relative to other landmarks, and its owner. The only cited deficiency in the description is the location of the residence in Bowling Green rather than Alvaton, Kentucky. The officers executing the search warrant had tried to effectuate the arrest warrant for Ferguson at the same residence earlier in the day. *See United States v. Gitcho*, 601 F.2d 369, 372 (8th Cir. 1979) (noting that fact that agents executing the warrant personally knew which premises were intended to be searched validated a search pursuant to a warrant providing the incorrect address), *cited in United States v. Durk*, 149 F.3d 464, 466 (6th Cir. 1998). The affiant officer also participated in the execution of the search warrant. This Court finds that the mistake in the warrant was not such that the executing officers were unable to identify the premises with reasonable effort. *See United States v. Biles*, 100 Fed. Appx. 484, 491 (6th Cir. 2004) (finding search warrant adequately described residence to be searched although it placed the residence in the wrong city, where warrant adequately described residence, its location to other identifiable landmarks, and its owner).

This Court also finds that there was not a reasonable probability that some other premises might be mistakenly searched. Although the warrant incorrectly placed the residence in Bowling Green, there is no address of 2946 Mt. Lebanon Church Road in that city. Also the executing officers had been to the residence earlier in the day and the affiant officer participated in the execution of the search warrant. *See Lyons v. Robinson*, 783 F.2d 737, 738 (8th Cir. 1985) (stating that where the same officer applies for and executes the warrant a mistaken search is unlikely), *cited in United States v. Durk*, 149 F.3d 464, 466 (6th Cir. 1998).

9

Therefore, this Court finds that the search warrant adequately described the place to be searched.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Suppress is DENIED IN PART AND GRANTED IN PART.

An appropriate order shall issue